IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH A. HONSINGER and LISA A. ALBRIGHT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 06-0018-CV-W-ODS |
| UMB BANK, N.A. and LORENE LOCKWOOD, in her capacity as Personal Representative for the Estate of James Lockwood, | ) ) ) ) ) ) | |
| Defendants. | ) | |

ORDER AND OPINION (1) GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND (2) DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending are cross-motions for summary judgment.  The Court concludes the Plaintiffs are entitled to partial summary judgment with respect to Defendants' "tax offset" defense, but in all other respects the parties' motions should not be granted. Accordingly, Plaintiffs' motion (Doc. # 78) is granted to that extent and denied in all other respects, and Defendants' motion (Doc. # 80) is denied.

I.  INTRODUCTION

Ordinarily, the Court does not suggest a view of the facts when denying summary judgment because the Court's view – beyond recognizing the existence of disputed material facts – is irrelevant.  However, a brief discussion of the undisputed facts will augment the Court's discussion about the statute of limitations and the calculation of damages.

Louise Reno's Will established two trusts upon her death: one designated for the benefit of her son, William Reno, and the other designated for the benefit of her

daughter, Plaintiff Elizabeth Honsinger. Both of Louise's[1] children are entitled to the income generated by their trusts during their lifetimes. Upon each of their deaths, the proceeds in their trust will be distributed to Honsinger's children, one of whom is Plaintiff Lisa Albright.[2] Louise's Will appointed Defendant James Lockwood as Executor of her estate and appointed Lockwood and Defendant United Missouri Bank of Kansas City ("UMB") as co-Trustees of the two trusts.

Ms. Reno died in November 1994 and was survived by her two children and three grandchildren. At the time of her death she owned a parcel of land in Gardner, Kansas (the "Property) that she had been leasing to APAC-KS for $1,100 annually plus royalties for all material – primarily limestone and dirt – removed from the Property.

In February 1996, Lockwood sent each of the five beneficiaries a letter advising he had filed a Federal Estate Tax Return and a Kansas Inheritance Tax Return and included copies of those documents. Honsinger admits to receiving the documents and knowing that the Property was valued at $137,400 for purposes of these tax documents. She testified she believed this estimation was intentionally conservative in order to minimize tax liability. Honsinger Dep. at 43-48. Albright does not remember whether she received the documents because she left it to her husband to review such matters. Albright Dep. at 82, 86. However, she shared her mother's belief that any valuation provided for tax purposes would be low because the trustee's job included attempting to keep tax liability as low as possible. Albright Dep. at 83, 85-86.[3]

After his mother's death, William expressed a desire for the Property to be sold because he feared potential liability due to environmental contamination.[4] On May 28,

---

[1]The Court will refer to Louise and William by their first names to avoid any confusion caused by their common last name.

[2]Honsinger's other two children, Michael Honsinger and Leslie Isbell, are not parties to this suit; neither is her brother, William.

[3]The Record also establishes that Lockwood sent copies of the tax returns to Albright's lawyer.

[4]Plaintiffs deny there was a risk of liability, but do not dispute William's belief that such a risk existed and motivated his desire that the Trust sell the Property. Whether

2

1996, one of UMB's trust officers (Myron Wheeler) sent letters to William and Honsinger confirming they wanted to sell the Property and other real estate in order to fund the two trusts. Honsinger was aware of the efforts to sell the Property and had no objection to them. In August 1996, the Property was sold to APAC-Carolina, Inc. (an entity related to APAC-KS) for $160,000. The contract also included certain indemnification provisions, the value of which is disputed by the parties.

The Record does not clearly establish when Honsinger or Albright learned of the sale or the sale price. Honsinger appears to have received monthly and annual statements that included a list of assets in the trust and a list of transactions that may have included this information. Honsinger Dep. at 58; Defendant's Exhibit 27. Albright did not contemporaneously receive these items. The Trustees interpreted the trust documents as prohibiting them from giving accountings and other financial information to Louise's grandchildren until they became the actual beneficiaries, and Honsinger and William initially refused to grant the trustees permission to provide Albright with these documents. Honsinger Dep. at 51-54; see also Defendant's Exhibit 51. Eventually, permission was granted; it appears Albright first obtained documents evidencing the Property's sale in the second half of 2003. Plaintiff's Exhibits EE and FF.[5]

---

such a risk actually existed is irrelevant to the issues decided in this Order.

[5]Another dynamic in this timeline involves Michael Honsinger, who worked for APAC-Kansas and was familiar with the Property. He was discussing unrelated trust work with Lockwood and learned of an offer to buy the Property for approximately $140,000. Michael believed this to be an inadequate sum and offered to buy the property for $200,000. Michael Honsinger Dep. at 57-60. At some point he learned the Property had been sold when he overheard someone at his place of employment discussing it "about the same time we started litigation." Id. at 64. Around that same time period, he expressed his outrage over the low sale price to Plaintiffs. Albright Dep. at 52-53, 57-59; Michael Honsinger Dep. at 73-74. No precise time for these events has been provided, so they do not clearly establish when Plaintiffs learned details about the Property's sale.

Case 4:06-cv-00018-ODS   Document 118   Filed 12/04/07   Page 3 of 11

## II.  DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992).  In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).  However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

### A.  The Merits of Plaintiffs' Claims

Plaintiffs generally allege Defendants are liable for selling the Property for less than it was worth.  The four-count Complaint asserts claims for breach of trust, breach of fiduciary duty, negligence, and fraudulent concealment.  Both sides seek summary judgment on the merits of these claims, but after reviewing the Record the Court concludes there are disputed issues of material fact that preclude judgment in favor of either side.

4

## B. Statute of Limitations/Laches

The parties seem to agree that Missouri's statute(s) of limitations apply to this suit, but they do not agree as to *which* statutes apply. In 2004, Missouri adopted many provisions from the Uniform Trust Code. Section 456.10-1005.3 of the Revised Missouri Statutes requires any suit by a beneficiary for breach of trust be brought within five years of the removal or death of the trustee, the termination of beneficiary's interest, or the termination of the trust.[6] None of these events occurred by the time suit was filed, so the suit appears timely. However, this statute does not apply to suits that were already time-barred on January 1, 2005. Mo. Rev. Stat. § 456.11-1106.2. Therefore, the critical question is whether Plaintiffs' claims were time barred on January 1, 2005.

Prior to January 1, 2005, the applicable limitation period for "any cause of action against a trustee for breach of trust" was five years after the trust terminated and the beneficiary received a final account. This limitation period was embodied in section 456.220, which was adopted in 1983 and was repealed when Missouri replaced many of its statutes regarding trusts with counterparts from the Uniform Trust Code. Section 456.220 codified the general legal precept that "[t]he statute of limitations does not run where a trust exists until the trustee repudiates the trust with notice to the beneficiary." In re Ott, 630 S.W.2d 182, 184 (Mo. Ct. App. 1982); see also Swon v. Huddleston, 282 S.W.2d 18, 28-29 (Mo. 1955); Simmons v. Friday, 224 S.W.2d 90, 95-96 (Mo. 1949). The Trust did not terminate, so the limitation period dictated by section 456.220 did not expire before January 1, 2005. Therefore, the limitation period in section 456.10-1005 applies and Plaintiffs' suit is timely.[7]

_____

[6]A shorter period applies if the trustee sends the beneficiary "a report that adequately disclose[s] the existence of a potential claim [and] the time allowed for commencing a proceeding with respect to any potential claim adequately disclosed on the report." Mo. Rev. Stat. § 456.10-1005.1. Defendants do not suggest that this shorter period applies here.

[7]This analysis applies to all of Plaintiffs' claims, regardless of how they are denominated, because all of Plaintiffs' claims are suits by beneficiaries against trustees for actions arising from the trust relationship. Deutsch v. Wolff, 994 S.W.2d 561, 568-69

5

Defendants argue section 456.220 establishes a limitation period that applies only when the trust has terminated, and if the trust has not terminated the general five year limitation period found in section 516.120(4) applies. Support for this position is gleaned from the beginning of the statute, which indicates it applies to any cause of action that has not been "previously barred by adjudication, consent or limitation." Defendants reason that the reference to a "limitation" means "statute of limitations," and infers this must be section 516.120(4). One of the most obvious flaws in this reasoning is the lack of judicial support; no Missouri case has interpreted section 456.220 in this manner.

Defendants try to present favorable case law by arguing that "breach of trust" and "breach of fiduciary duty" are treated as the same cause of action, and the statute of limitations for a breach of fiduciary duty is governed by section 516.120(4). Ordinarily, a claim for breach of fiduciary duty is governed by section 516.120(4). E.g., Klemme v. Best, 941 S.W.2d 493, 497 (Mo. 1997) (en banc) (breach of fiduciary). However, all of the cases – including those cited by Defendants – acknowledging this involve fiduciaries who are not acting trustees. See id. at 495-96 (fiduciary was an attorney representing plaintiff in litigation); Koester v. American Republic Investments, Inc., 11 F.3d 818, 820-21 (8th Cir. 1993) (limited partners asserted breach of fiduciary duty claims against general partners); Lehnig v. Borhop, 859 S.W.2d 271, 272-73 (Mo. Ct. App. 1993) (limited partners asserted breach of fiduciary duty claims against general partners and attorney representing partnership). The failing in Defendants argument is that in treating the causes of action the same all Missouri courts have done is recognize the *elements* are the same. This does not mean that a suit by a beneficiary against a trustee is, for all purposes, treated the same as any other claim against a fiduciary. To the contrary, Plaintiffs have referenced a decision that counters Defendants' position. Deutsch v. Wolff involved a claim for a constructive trust, which ordinarily would have been governed by the general statute; specifically, section 516.120(1). However, the

---

(Mo. 1999) (en banc).

Case 4:06-cv-00018-ODS   Document 118   Filed 12/04/07   Page 6 of 11

Missouri Supreme Court held section 456.220 provided the applicable limitation period because the suit involved defendant's actions in his capacity as a trustee. 994 S.W.2d 561, 568-69 (Mo. 1999) (en banc). In so doing, the court did not make a distinction based upon whether the trust had terminated (it had not) or indicate some other statute of limitation had to be considered.

Section 456.220's introductory clause simply refers to circumstances in which the suit cannot be brought at all, such as when the claim has already been adjudicated. In this context, the term "limitation" is best understood as a an exculpatory clause, wherein the trust's creator attempted to limit the trustee's exposure to suit. E.g., Jarvis v. Boatmen's Nat'l Bank of St. Louis, 478 S.W.2d 266, 274 (Mo. 1972). The statute establishes a limitation period for claims of a specified nature, obviating the need to refer to the general statute of limitations. Finally, the Court's interpretation is consistent with the then-prevailing law establishing that a suit by a beneficiary against a trustee does not become time-barred while the trustee remains. For these reasons, the Court holds Plaintiffs' claims are governed by section 456.220, and they are not untimely.[8]

Defendants also contend Plaintiffs' claims should be barred by the doctrine of laches. "Invocation of laches requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers legal detriment therefrom." Port Perry Marketing Corp. v. Jenneman, 982 S.W.2d 789, 792 (Mo. Ct. App. 1998) (internal quotation omitted). The legal detriment that will support the defense is either "(1) the loss of evidence which would support the [Defendants'] position and (2) a change in position that would not have occurred but for the delay." Id. There is no suggestion that the second category is implicated, but

---

[8]It should be noted that even if the general statute applies, the limitation period would have started when the fact of damage was capable of being ascertained. Albright could not ascertain that she was damaged until the documents were provided to her in 2003. The Record reflects this was the first time she learned the Property had been sold and the price it was sold for. Therefore, her claims would be timely in any event. With respect to Honsinger, the Record does not clearly establish when she was capable of ascertaining that she had been damaged.

Defendants contend Lockwood and other witnesses have died and the passage of time has resulted in faded memories.

The Record does not conclusively establish that an inordinate delay occurred. As mentioned in footnote 8, supra, it appears Albright could not have known about the issue until 2003, and this suit was filed approximately two and half years later. The Record does not permit any conclusions about Honsinger's knowledge. The Record is equally inconclusive with respect to Defendants' claims of prejudice. Much of the important information appears in documents, and there is no suggestion that the passage of time has resulted in their loss or destruction. The death of Louise's accountant is not a factor because (as will be seen shortly) Defendants are not entitled to discount any damages owed by the estate tax that would have been triggered by a higher sale price. The nature of the claims does not appear to rely extensively on oral testimony, so even Lockwood's death does not appear to have had much impact. Finally, the speculative loss of corroborative information that might have been provided by others who are now deceased does not serve as prejudice.

The Court holds that, on this Record, the defense of laches would not be applicable to Albright's claims and the defense's availability cannot be ascertained with respect to Honsinger's claims. Therefore, Defendants' request for summary judgment on their defense of laches is denied.

## C. Tax Implications and Damages

Defendants contend any damages that are awarded must be reduced by the amount of estate tax Louise's estate would have had to pay if the Property had been sold for a higher price. Both sides seek summary judgment on this issue. The Court rules in favor of Plaintiffs.

The issue of damages is governed, like the substance of Plaintiffs' claims, by state law. As with the other issues in this case, the parties seem to agree Missouri law governs. Plaintiffs rely on cases addressing the role of income taxes in calculating damages. These cases hold income taxes should play no role in the calculation

8

because "[i]t is the province of the Internal Revenue Service and local taxing authorities to deduct taxes from the recovery by a plaintiff of what presumably would have been ordinary income to it but for the defendant's activities." Orchard Container Corp. v. Orchard, 601 S.W.2d 299, 306 (Mo. Ct. App. 1980). This case also warns that the ultimate tax liability will depend on factors that are not before the court and there is a risk of "double taxation" if the award is reduced for taxes, then subject to taxation by governmental authorities. Id.

Defendants have no quarrel with this rationale insofar as it applies to income taxes, but contends the analysis should be different when the matter involves estate taxes. Defendants reason that if the property had been sold for a higher price in 1996, more estate tax would have been paid out of Louise's estate, leaving less for the trusts. This would, according to Defendants' expert, have necessitated the filing of an amended federal estate tax return. Defendants then assert an award for Plaintiffs would not take this into account, resulting in a windfall for them.

The Court is not convinced this is correct. Even if the Property was sold at a higher price in 1996 and greater tax liability was incurred, Louise's estate would have had to file an Amended Return. Hanna Affidavit, ¶ A(4). Presumably, the obligation to file an Amended Return would still exist if Plaintiffs prevailed in this suit, so the situation is no different now than it was in 1996. Defendants suggest that, as a practical matter, the taxes would not be paid – a situation Defendants characterize as a windfall to Plaintiffs. Whether the IRS would or could seek payment of taxes – and from whom – is a matter for another day and another forum. However, the future actions of the tax collector have no bearing on the measure of damages. Moreover, even if Defendants are correct, there is no reason why they should benefit from a windfall. If Defendants are correct and the taxes will never be paid, there is no principled reason to allow them to keep this benefit. While Orchard Container involves income taxes, the underlying rationale – that the award should not be affected by the unknown and future actions of taxing authorities – applies in this situation.

The cases Defendants rely upon are distinguishable. In Metro Trust Co. v. Northwestern Savings & Loan Ass'n, the plaintiffs' mother opened and funded bank

accounts under the Uniform Gift to Minor's Law and designated herself as the custodian. Thereafter, she borrowed funds from the accounts and used the proceeds to purchase real property. The mother died intestate; she still owned the property at the time of her death, so it became part of her estate and, eventually, went to her children. 654 S.W.2d 631, 633-34 (Mo. Ct. App. 1983). The trial court held the daughters suffered no damage because the property purchased with the improperly-taken proceeds came back to them via the estate. In reversing, the court of appeals essentially recognized the daughters were damaged by virtue of having to pay estate tax on the property, which they would not have had to pay if the money had not been taken from their accounts. Id. at 635. On remand, the trial court was directed to compare the gross value of the gift if it had not been touched (principal plus interest, less any interest that would have been paid over to the custodian for her services) with the value of the property less probate expenses including taxes, fees and costs. Id. In short, the plaintiffs' damages included an increased tax burden as a consequence of actions already taken by the taxing authority, and the court of appeals held this burden must be considered in the calculation. The case does not establish the converse; namely, that the defendant is entitled to subtract taxes the plaintiff would have to pay from the damage award as a result of future actions that might be taken by the tax collector in order to reduce the damage award. The case does not even mention those cases holding that defendants are not so entitled, and thus should not be interpreted as advancing a contrary rule. All Metro Trust establishes is: if a defendant's conduct causes a plaintiff to incur an increased tax burden, the increased burden is a component of the damages.

Defendants next rely on the United States Supreme Court's "pragmatic approach for taxes when offsetting damage awards." The case relied upon involves a different legal situation that renders it inapplicable. The case involved a claim under the Federal Employers Liability Act ("FELA"), and federal law establishes that the damages awarded under FELA is the plaintiff's after-tax income; consequently, the award is not subject to taxation, so there is no concern about double taxation. In fact, the jury is specifically instructed on this point. Norfolk & Western R.R. Co. v. Liepelt, 444 U.S. 490, 496-97

10

(1980). The measure of damages in this state-law action is not governed by how federal law measures damages for FELA purposes.

In short, there is no way to know how the IRS will respond to any award in Plaintiffs' favor – and in that respect, this case is really no different from any other case. As with any other case, the unknown actions of the taxing authority should have no effect on Plaintiffs' recovery.

<u>III.  CONCLUSION</u>

For these reasons, the Court concludes Defendants are not entitled to reduce the damage award based on the tax consequences of their having acted properly in the first place.  In all other respects, both parties' motions for summary judgment are denied.

IT IS SO ORDERED.

/s/ <u>Ortrie D. Smith</u>
ORTRIE D. SMITH, JUDGE
DATE: December 4, 2007          UNITED STATES DISTRICT COURT

11

Case 4:06-cv-00018-ODS   Document 118   Filed 12/04/07   Page 11 of 11